**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**BARRY O'CONNELL,**

                                   **Plaintiff,**

        vs.                                        **3:20-CV-34**
                                                          **(MAD/ML)**

**RICHARD LOUCKS,**

                                 **Defendant.**

_____

**APPEARANCES:**                           **OF COUNSEL:**

**BASCH, KEEGAN LAW FIRM**        **DEREK J. SPADA, ESQ.**
307 Clinton Avenue                      **MIKAEL ARI COHN, ESQ.**
P.O. Box 4235
Kingston, New York 12402
Attorneys for Plaintiff

**COSTELLO, COONEY & FEARON, PLLC**    **DANIEL P. FLETCHER, ESQ.**
211 W. Jefferson Street
Syracuse, New York 13202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

       Plaintiff commenced this diversity action on January 9, 2020, alleging that Defendant's negligence resulted in an automobile accident between the two parties. _See_ Dkt. No. 1. Following the close of discovery, the Court held a one-day bench trial on January 18, 2022. _See_ Dkt. No. 32. The Court reserved decision. The following are the Court's findings of fact and conclusions of law made pursuant to Rule 52 of the Federal Rules of Civil Procedure.

**II. FINDINGS OF FACT**

On May 26, 2019, there was a two vehicle accident involving Plaintiff and Defendant. The accident happened at or near the intersection of State Route 81 and County Route 75 in the Town of Greenville, in Greene County, New York.  Plaintiff was driving a 2019 GMC Terrain and Defendant was driving a 2013 Chevy pickup truck.

Immediately prior to the accident, Plaintiff was traveling east on County Route 75 and Defendant was traveling west on State Route 81.  There was a yield sign for traffic traveling on County Route 75 at its intersection with State Route 81.

At trial, Plaintiff's first witness was his son, Blake O'Connell.  *See* Dkt. No. 34 at 5.  Blake was in the front passenger seat of Plaintiff's car on the day of the accident, while his mother and two sisters were in the rear seats.  *See id.* at 6-7.  Plaintiff's family was driving to New York City after attending a family wedding the day before.  *See id.*

Blake testified that their vehicle was traveling eastbound on Route 75 when they came to a yield sign at the intersection of Route 81.  *See id.* at 7-8.  Upon reaching the yield sign, Blake claims that his father came to almost a complete stop and looked both ways.  *See id.* at 8.  Blake testified that they observed Defendant's truck to their left, and that it was about "700 yards" away from the intersection.  *See id.*  At this point, Plaintiff made a left-hand turn onto Route 81 and noted that "the truck had completely lost control and was weaving in and out, going over the lanes back and forth."  *Id.*  Blake claimed that, immediately prior to the accident, Defendant's truck was "fishtailing" back and forth between both lanes of travel.  *See id.* at 8-9.  At the time of the accident, Blake testified that Plaintiff was traveling at approximately five miles per hour in the eastbound lane of travel on Route 81, while Defendant was traveling at approximately fifty-to-sixty miles per hour and did not appear to apply his brakes leading up to the collision.  *See id.* at 12-13.  Blake testified that Defendant struck Plaintiff's vehicle head on.  *See id.* at 13.

On cross-examination, Blake clarified that, upon reaching the yield sign on Route 75, Plaintiff brought his vehicle to a complete stop for approximately four-to-five seconds, during which time both he and Plaintiff looked for oncoming traffic coming in both directions. *See id.* at 17-18. Further, Blake made clear that, from the time that he first saw Defendant's pickup truck to the time of the collision, approximately thirty seconds elapsed. *See id.* at 19. Blake also estimated that Defendant's vehicle was traveling at approximately eighty miles per hour when he first observed it, that he saw smoke coming from the tires of Defendant's truck, and that it was going approximately sixty-to-sixty-five miles per hour at the time of the accident. *See id.*

Plaintiff next testified on his own behalf. *See* Dkt. No. 34 at 21-57. According to Plaintiff, when he first approached the intersection of Routes 75 and 81, he looked for approaching vehicles in both directions and saw Plaintiff's vehicle to his left traveling westbound on Route 81, approximately 100 yards from the intersection. *See id.* at 24-25. Plaintiff testified that, once he entered his lane of travel eastbound on Route 81, he noticed "that the truck that was coming towards us had lost control and was swerving from lane to lane even onto the shoulder." *Id.* at 26. Plaintiff claimed that Defendant appeared to overcorrect and ended up in the eastbound lane, striking Plaintiff's vehicle. *See id.* Plaintiff recalled that there was smoke coming off of Defendant's tires from Defendant having locked out the brakes on his vehicle. *See id.* Plaintiff estimated that he was traveling between five-to-seven miles per hour at the time of the collision, and that Defendant was traveling between fifty-five-to-sixty miles per hour, having slowed down from approximately eighty miles per hour. *See id.* at 26-27. The posted speed limit on both Route 75 and Route 81 is thirty-five miles per hour. *See id.* at 27.

According to Plaintiff, the collision was head on, with the driver's sides of each vehicles coming into contact with each other. *See id.* at 28. The force of the collision spun Plaintiff's car

3

180 degrees, while Defendant's vehicle came to rest off the road against a stone wall.  *See id.* at 28-29.  Emergency responders eventually transported Plaintiff and his family to Albany Medical Center for treatment.  *See id.*  Plaintiff concluded his testimony discussing the injuries he suffered as a result of the accident.  Additionally, on cross-examination, Plaintiff acknowledged that, at some point during his three-day admission to Albany Medical Center, a New York State Trooper served him with a ticket in relation to the accident.  *See id.* at 55.[1]

At the conclusion of Plaintiff's testimony, his medical records were entered into evidence and Plaintiff rested his case.  *See id.* at 56-58.  Over Defendant's objection, the Court found that Plaintiff's medical records were sufficient to qualify as a serious injury under New York's no-fault law.  *See id.* at 58-59.  Specifically, the Court noted that Plaintiff's medical records noted a diagnosis of closed fracture lumbar vertebra, closed fracture cervical spine, caused by a motor vehicle accident.  *See id.*  As such, the Court denied Defendant's request for a directed verdict on this ground.

In his case in chief, Defendant first called New York State Trooper Thomas J. Greene. *See* Dkt. No. 34 at 59-69.  Trooper Greene was on duty on May 26, 2019, and reported to the scene of the accident between Plaintiff and Defendant.  *See id.* at 60-61.  As part of his investigation into the accident, Trooper Greene interviewed both Plaintiff and Defendant and prepared a report that was received into evidence.  *See id.* at 61-62.  According to Trooper Greene, Plaintiff stated he "attempted to make a left-hand turn onto State Route 81, and that's when he struck [Defendant's vehicle], which was traveling westbound.  [Plaintiff] stated he did not see [Defendant's vehicle] on scene."  *Id.* at 62; *see also* Dkt. No. 37-2 at 2 ("BARRY stated

---

[1] On redirect examination, Plaintiff testified that the ticket was eventually dismissed on technical grounds, because the Trooper had inadvertently written the ticket for operating an all-terrain vehicle in an unsafe manner.  *See* Dkt. No. 34 at 56-57.

that he did not see [Defendant's vehicle] before turning left").  Additionally, Trooper Greene testified that during his investigation, Defendant stated that he observed Plaintiff fail to yield before turning onto Route 81 and that Plaintiff struck Defendant head-on.  *See id.* at 63.

On cross examination, Trooper Greene acknowledge that he did not take notes while at the scene of the accident and that his report was prepared when he returned to the station later that day.  *See id.* at 64.  While Trooper Greene could not confirm that the statements in his report were exact quotes from the parties, he was confident that the statements described in his report were the "sum and substance" of what was said to him that day.  *See id.* at 64, 66.  Trooper Greene also acknowledged that he wrote Defendant a ticket for failing to yield the right-of-way, but that he mistakenly wrote it "not for a motor vehicle, but ... for an ATV."  *Id.* at 66-67.  Trooper Greene also noted that, on the day of the accident, it was a clear, sunny day.  *See id.* at 68.

Defendant was the final witness to testify at the bench trial.  *See* Dkt. No. 34 at 68-76.  Defendant testified that he worked for the Kortright Highway Department for approximately thirty years before his retirement, driving snow plows and other heavy equipment.  *See id.* at 69.  On the day of the accident, Defendant and his wife went for a ride in their truck and stopped at yard sales along the way.  *See id.*  After stopping at a yard sale in Greenville, they decided to return home.  *See id.* at 70.  Defendant testified that he first saw Plaintiff's vehicle when it was turning off of Route 75 and that there was no time to apply his brakes.  *See id.* at 71.

On cross examination, Defendant testified that he was traveling at around thirty-five-to-forty miles per hour at the time of the accident.  *See id.* at 72.  Defendant also reiterated that he first saw Plaintiff's vehicle immediately prior to reaching the intersection and that there was no time to either sound his horn or apply his brakes prior to impact.  *See id.* at 74.  Defendant further testified that Plaintiff's vehicle struck his truck on the passenger side front end.  *See id.*  Finally,

Defendant testified that the force of the impact forced his truck to cross over to the other side of the road, eventually coming to rest against a stone wall.  *See id.* at 76.

### III. CONCLUSIONS OF LAW

"To establish a *prima facie* case of negligence under New York law, three elements must be demonstrated: (1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach."  *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998) (citations omitted). "Negligence is conduct falling beneath the standard of care which would be exercised by a reasonably prudent person in similar circumstances at the time of the conduct at issue." *Thaqi v. Wal-Mart Stores East, LP*, No. 09 CV 755, 2014 WL 1330925, *4 (E.D.N.Y. Mar. 31, 2014) (quoting *Harper v. United States*, 949 F. Supp. 130, 132 (E.D.N.Y. 1996)).  Under New York law, the burden is on the plaintiff to prove, by a preponderance of the evidence, that he is entitled to a damages award.  *See Lopez v. United States*, 312 F. Supp. 3d 390, 400 (S.D.N.Y. 2018) (citation omitted).

Here, Plaintiff has established that Defendant owned a duty to him because every motorist "'owes a duty of care to other motorists while driving.'" *Akhalia v. Guardia*, No. 11-cv-531, 2013 WL 2395974, *5 (E.D.N.Y. May 31, 2013) (quotation and other citation omitted).  Plaintiff's claim fails, however, at the second element, *i.e.*, that Defendant breached this duty of care.  The credible evidence at trial failed to demonstrate by a preponderance of the evidence that Defendant negligently operated his vehicle on the day in question.  Rather, the evidence at trial demonstrated that Plaintiff either failed to yield at the intersection of Routes 75 and 81 or, if he did yield, he failed to observe Defendant's approaching vehicle before continuing on his way.

At trial, both Plaintiff and his son testified that Defendant was traveling at an excessive rate of speed and that Plaintiff was applying his brakes with such force that Defendant's vehicle was skidding and smoke was coming from the tires.  However, the photographs taken by the New York State Police show no skid marks in the road where Defendant traveled towards the point of impact.  *See* Defense Exhibits D-2, D-3, D-4 & D-5.  Additionally, contrary to his testimony at trial, on the day of the accident Plaintiff told Trooper Greene that he never saw Defendant's truck before he entered onto State Route 81.

Simply put, Defendant was not the negligent party in this case.

### IV. CONCLUSION

After carefully reviewing the evidence in this matter, including the trial testimony and evidence received, the Court hereby

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 7, 2022
        Albany, New York

Mae A. D'Agostino
U.S. District Judge